UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brandy P.,[1]  <br><br>                Plaintiff,<br><br>v.<br><br>Frank J. Bisignano,[2] Commissioner of the Social Security Administration,<br><br>                Defendant. | C/A No. 9:24-cv-07358-SAL-MHC<br><br>**REPORT AND RECOMMENDATION** |

      Plaintiff Brandy P. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be remanded for further consideration.

## I.    BACKGROUND[3]

      Plaintiff applied for DIB on April 16, 2021, alleging disability beginning January 29, 2021. R.pp. 84, 189, 205–11. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 84–94, 111–13. A hearing, at which Plaintiff,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[3] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 9.

represented by counsel, and a vocational expert (VE) testified, was held virtually on November 2, 2023. R.pp. 36–57. The ALJ thereafter denied Plaintiff's claims in a decision issued on January 10, 2024, finding that Plaintiff was not disabled from the alleged date of onset through the date of the decision. R.pp. 17–30. The Appeals Council denied Plaintiff's request for review on November 5, 2024. R.pp. 1–5.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II.    APPLICABLE LAW

### A.  Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that

of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id*. (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the "statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

### B. Social Security Disability Evaluation Process

To be considered "disabled" within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet

the regulations' severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).[4] *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets h[is] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id*.

### III.    ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from the alleged onset date of January 29, 2021. R.pp. 17–30. The ALJ found, in pertinent part:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

---

[4] The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

2. The claimant engaged in substantial gainful activity during the following periods: the second quarter of 2022 (20 CFR 404.1520(b) and 404.1571 et seq.). . . .

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity. . . .

4. The claimant has the following severe impairments: degenerative disc disease, connective tissue disorder, and obesity (20 CFR 404.1520(c)). . . .

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never climb; can occasionally balance, stoop, kneel, crouch, and/or crawl; requires a hand held assistive device for uneven terrain or prolonged ambulation; and can have no exposure to workplace hazards, such as moving machinery or unprotected heights[.] . . .

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565). . . .

8. The claimant was . . . 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

9. The claimant has at least a high school education (20 CFR 404.1564).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). . . .

12. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2021, through the date of this decision (20 CFR 404.1520(g)).

R.pp. 19–30.

## IV.  DISCUSSION

Plaintiff argues the ALJ erred for three reasons. First, she argues the ALJ did not properly evaluate the intensity, persistence, and limiting effects of her symptoms. ECF No. 14 at 16–26. Second, she argues the ALJ improperly disregarded her cane and rollator walker. *Id.* at 26–27. Third, she asserts that the ALJ wrongfully discounted Plaintiff's testimony related to frequency of headaches. *Id.* at 27. The Commissioner disagrees, arguing the ALJ's decision was supported by substantial evidence and her evaluation of Plaintiff's subjective allegations conformed with applicable law. ECF No. 15 at 1. Upon review, the undersigned finds that the ALJ's decision is not supported by substantial evidence, leaving the Court to guess as to the basis for her determinations and warranting remand.

### A. Plaintiff's Need for Assistive Devices

Plaintiff argues the ALJ improperly disregarded her cane and rollator walker. ECF No. 14 at 26–27. The Commissioner contends that the ALJ appropriately found that Plaintiff only required a cane when ambulating long distances or on uneven terrain, and that a walker was not medically necessary, arguing that evidence of a prescription for an assistive device does not indicate the device is medically necessary. ECF No. 15 at 14–15. Plaintiff replies that the ALJ's hypothetical wrongfully minimized Plaintiff's requirements related to an assistive device, and the recent nature of the prescribed walker does not change its necessity. ECF No. 16 at 3–4.

Social Security Ruling 96–9p requires consideration of the impact of medically-required hand-held assistive devices on the unskilled sedentary occupational base. *Titles II & Xvi: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work*, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2,

1996).[5] In determining whether the assistive device is in fact medically required, SSR 96–9p provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id.*

Here, the ALJ included an RFC restriction that Plaintiff "requires a hand held assistive device for uneven terrain or prolonged ambulation," R.p. 22. Later in her decision, to explain this restriction, the ALJ noted: "the use of a cane was added based on the recent prescription to use as needed. The finding regarding use of a walker is not warranted, however, as the claimant testified that she had gotten one as of the hearing date."[6] R.p. 27.

Based on discrepancies in the record that the ALJ failed to reconcile or acknowledge, the undersigned finds that the ALJ's opinion is not supported by substantial evidence and should be remanded.

   1. Prescriptions for Assistive Devices

The record shows that Plaintiff has been prescribed two hand-held assistive devices: (1) a prescription by Dr. Michael T. Latzka from September 14, 2023, for a walking cane "to use as

---

[5] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating social security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

[6] The ALJ likely meant to include "not" in the latter portion of this final sentence. *See* R.p. 47.

needed and as directed to help with ambulation as some history of joint pain with arthritis and this will help assist if any flare and avoid a higher risk of fall when without assistance of ambulation," R.p. 616; and (2) an order for a walker rollator from September 15, 2023, by Dr. Michael David Mitchell, listed as "medically necessary due to [history of] lumbar surgery [and] recent fall." R.p. 623.

Though the ALJ acknowledged Plaintiff's prescription for a cane by Dr. Latzka, Plaintiff's primary care physician, in her opinion, she only found Dr. Latzka's opinion "partially persuasive" because though "the evidence show[s] some periods of antalgic gait," "the record contains no explanation and no objective medical findings on physical examination to support the need for a cane, and it is not consistent with the other notes . . . indicating the claimant had normal strength and normal gait. Moreover, the record contains no evidence of any appointment where the claimant was using a cane or any other assistive device to aid in ambulation." R.p. 29.

Further, the ALJ discredited the opinion of Dr. Mitchell, who prescribed the walker, because he prescribed the walker in the same visit where Plaintiff was observed to have good lower extremity range of motion, intact neurological functioning, and no gait abnormalities. R.p. 25. The ALJ did not address or otherwise engage with the "recent fall" notation on the prescription for the walker. The ALJ also highlighted that at Plaintiff's October 2023 visit with Dr. Mitchell, she walked with a "good gait" with no mention of a cane or other ambulation device. R.p. 25. The ALJ noted conflicting opinions from Dr. Mitchell and found his opinions unpersuasive based on their inconsistencies with each other. R.pp. 27–28.

Having discredited the opinions of the two physicians who prescribed the assistive devices and finding "no objective medical findings on physical examination to support the need for a cane," R.p. 29, the ALJ nevertheless included an assistive device in Plaintiff's RFC determination.

8

R.p. 23 (Plaintiff "requires a hand held assistive device for uneven terrain or prolonged ambulation").

A determination of whether a hand-held assistive device impacts Plaintiff's ability to work is ultimately the province of the ALJ, as "even if a cane is prescribed, it does not necessarily follow that it is medically required." *Neal v. Berryhill*, No. CV 9:18-545-TLW-BM, 2019 WL 4359546, at *4 (D.S.C. May 29, 2019) (quoting *Wimbush v. Astrue*, No. 4:10-CV-00036, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011)), *report and recommendation adopted sub nom. Neal v. Saul*, No. 9:18-CV-00545-TLW, 2019 WL 4345297 (D.S.C. Sep. 12, 2019). However, the determination and level of consideration given must have substantial evidentiary support. *See Brown*, 873 F.3d at 267. As set forth below, here, the ALJ's failure to adequately explain how or whether she accounted for Plaintiff's hand-held assistive device does not.

2. Plaintiff's Testimony Regarding Need for Assistive Devices

At the hearing before the ALJ on November 2, 2023, Plaintiff testified in response to the ALJ's questions as follows:

> Q: Do you use anything to help you walk?
> A: Yes, a cane.
> Q: How long have you been using that?
> A: Well, I fought them for a while with this cane because I think I'm too young to have it and I thought I was too cute to have it. So I've been using it for a while now though.
> Q: All right. What's a while?
> A: I want to say like over -- I don't know, months. The beginning of the year maybe.
> Q: And what about the walker? What do you think about that?
> A: I haven't gotten it yet but it's like if I got to walk from here to my car and my back is burning, I can at least down on the seat instead of like leaning over my car, so –
> ALJ: Thank you for talking with me, ma'am.
> CLMT: Um-hum.
> ALJ: Your witness, Counsel.

R.p. 47.

9

In her opinion determining that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent with other evidence in the record, the ALJ found:

> [T]he claimant stated on her function reports at Exhibit B3E and B6E that she uses a cane and a walker, yet she testified that she does not have a walker. She also stated that she has used a cane since the beginning of 2023 (Hearing Testimony), but her treatment records from 2023 do not indicate that she used an assistive device (see Exhibits B5F, B7F-B10F). She claimed inability to walk farther than 10 feet (Exhibit B3E), but her treatment records (discussed below) repeatedly indicate that she has intact strength in her lower extremities. Moreover, her claims regarding her physical abilities are inconsistent with her reports to her primary care provider that she exercises by walking and doing aerobics three to four times a week (see Exhibits B5F/3, 18, 30; [7] B9F/1).

R.p. 23.

The evidence the ALJ cites in contrast to Plaintiff's testimony, however, has blatant discrepancies that the ALJ does not resolve or even acknowledge. As such, the ALJ's opinion cannot be said to be supported by substantial evidence.

Notably, the ALJ points to medical records from Plaintiff's primary care physician, Dr. Michael Latzka, that indicate that Plaintiff "exercises by walking and doing aerobics three to four times a week." R.p. 23 (citing R.pp. 542, 557, 569, 614). This note initially appeared in the social history portion of a visit in February 2020, in which Dr. Latzka indicated that for exercise, Plaintiff "[b]icycles, walks and does aerobics 3–4 times a week." R.p. 569. The identical notation remains unchanged and is rotely repeated in visit notes from April 16, 2021; March 9, 2023; and September 14, 2023. R.pp. 557, 542, 614. It is also referenced in the denial of Plaintiff's application for reconsideration of DIB. R.p. 92.

However, other evidence in the record suggests Plaintiff's difficulty with exercise and encouragement by physicians that she do more physical activity. *See* R.pp. 318, 325, 328–29, 382–

---

[7] These records are actually located at B6F, pages 3, 18, and 30. R.pp. 542, 557, 569.

10

83, 386, 389, 392, 395, 411, 416, 559. And most importantly, Plaintiff's Counsel directly addressed the discrepancy in the medical record at the hearing before the ALJ:

> Q: Okay. Let's see here, flipping through my notes. Bear with me. Did you go -- did you see Dr. Lotska [phonetic] for a while?
> A: Uh-hum, that's my family doctor.
> Q: Okay. So I have to ask you this, it's in it looks like a note of his from April of '21, April 16th of '21.
> A: Um-hum.
> Q: He says that you bicycle, you walk, and you do aerobics three to four times a week in April of '21.
> A: I don't know why he would say that.
> Q: To the best of your knowledge, were you doing that?
> A: No.
> Q: Would you have been physically able to do that?
> A: No.
> Q: Any idea how it got in there?
> A: No. Aerobics and bicycling?
> Q: Okay. Anything else you wanted to mention?
> A: No, not as I know of.

R.pp. 52–53. Despite Plaintiff's strong disavowal of the accuracy of this statement at the hearing before the ALJ, the ALJ relied on the evidence without any discussion or reasoning for why this statement in her medical record was given more weight than Plaintiff's testimony directly to the contrary.

This decision strikes the undersigned as impermissible cherry-picking. *See Lewis*, 858 F.3d at 869 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while *ignoring* evidence that points to a disability finding." (emphasis added) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))); *see also Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling . . . includ[ing] a discussion of *which evidence the ALJ found credible and why*, and specific application of the pertinent legal requirements to the record evidence." (emphasis added)). Though the ALJ stated

that she did not find Plaintiff's statements concerning the intensity, persistence, and limiting effects of her systems to be entirely consistent with the record evidence, the ALJ appears to have completely ignored a direct conflict in the evidence without explaining why. This Court cannot make credibility determinations and is only "empowered to review the ALJ's *decisions*," including credibility assessments, "for substantial evidence." *See Johnson v. Barnhart*, 434 F.3d 650, 658–59 (4th Cir. 2005) (emphasis added); *see also Hancock*, 667 F.3d at 472 (noting the responsibility for making a *decision* resolving conflicting evidence falls on the ALJ). But where the ALJ completely omitted a credibility determination that would explain why she disregarded Plaintiff's statements directly contradicting the evidence on which the ALJ expressly relied—essentially failing to make, or at least state that she made, any *decision* at all—there is nothing for the Court to review, and the ALJ's opinion cannot be said to be supported by substantial evidence.

Moreover, the ALJ's failure to include this credibility determination warrants remand because Plaintiff's use of an assistive device affects the ultimate determination on her ability to find work in significant numbers. The VE testified that a need for the use of an assistive device for balance or when standing would change the decision in this case. At the hearing, the ALJ asked the VE:

> Q: Please assume a hypothetic[al] individual of the claimant's age and education with the past work as described. Please assume that this hypothetical individual is limited as follows: Hypothetical #1 is sedentary work except she could never climb, she could occasionally balance, stoop, kneel, crouch or crawl. She requires a handheld assistive device for uneven terrain or prolonged ambulation. She could tolerate or should have no exposure to workplace hazards such as the use of moving machinery and exposure to unprotected heights. That is hypothetical #1. I see that that would exclude the past work. Would there be other jobs?
> A: And you said she uses the assistive device [INAUDIBLE]?
> Q: For uneven terrain or prolonged ambulation.
> A: So with that being the case, it would exclude sedentary work.
> Q: Tell me why, please?
> A: Because she's using that --
> Q: And Ms. Hooper, I often hear that response if the handheld device is used at all

12

> times when standing or for balance.
> A: If it is just for – it's just for prolonged. I apologize, Your Honor. It is my fault.
> Q It's the end of the day. I understand. I understand. Take a minute. Should I repeat myself?
> A You're good. I appreciate your understanding. So at the sedentary level then I would have the order clerk, DOT code 209.567 014 with an SVP of 2 and at the sedentary level, and approximately 133,000 jobs. I have the addresser, DOT code 209.587 010 with an SVP of 2 at the sedentary level, and approximately 41,000 jobs. And then lastly I have the call-out operator, DOT code 237.367-014 with an SVP of 2 at the sedentary level and approximately 16,000 jobs.

R.pp. 54–56.

It is clear that, had the ALJ's RFC determination accounted for the routine use of a cane, walker, or other assistive device as Plaintiff argues it should have, the work that the ALJ determined existed in significant numbers in the national economy would no longer be available to Plaintiff. *See* R.pp. 54–56. The RFC determination instead indicated the use of a hand-held assistive device for uneven terrain or prolonged ambulation only, R.p. 22, rather than at all times when standing or for balance. The ALJ offers that the cane limitation was included "based on the recent prescription to use as needed," R.p. 27, but she also stated that "the record contains no explanation and no objective medical findings on physical examination to support the need for a cane, and it is not consistent with the other notes . . . indicating the claimant had normal strength and normal gait." R.p. 29. The ALJ has therefore not sufficiently explained why she narrowed the scope of the use of an assistive device or her basis for including any limitation at all, if she did not find the prescriptions or supporting physicians' opinions consistent or persuasive. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (noting an "ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion'" (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872, 878–80 (4th Cir. 2023).

"Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 764 (W.D. Va. 2002) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)); *see also Mascio*, 780 F.3d at 636–37 ("The missing analysis is especially troubling because the record contains conflicting evidence as to [plaintiff's] residual functional capacity—evidence that the ALJ did not address."); *Smith v. Heckler*, 782 F.2d 1176, 1181 (4th Cir. 1986) (finding ALJ's decision deficient based on "a gap in its reasoning").

In sum, the ALJ noted she only found Dr. Latzka's medical opinion partially persuasive, including his prescription for a cane. R.p. 29. She also discredited Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, highlighting that the record showed Plaintiff did aerobics and bicycling three to four times per week. R.p. 23 (citing R.pp. 542, 557, 569). But the ALJ's reliance on the evidence of routine physical activity is contradicted by testimony from Plaintiff, and the ALJ did not acknowledge the conflict or provide any sort of credibility determination that would otherwise allow the undersigned to understand the basis for the omission.

There is a clear gap in reasoning here. *See Smith*, 782 F.2d at 1181; *Mascio*, 780 F.3d at 637. Without any explanation addressing Plaintiff's blatant contradiction of the evidence upon which the ALJ largely relied in discrediting Plaintiff's description of her symptoms, the ALJ's opinion is not supported by substantial evidence. The limited bases for discrediting Plaintiff's testimony are potentially erroneous, and the ALJ has not included any explanation for how she arrived at her ultimate conclusion.

An ALJ is certainly entitled to weigh the evidence as she sees fit. *See Hays*, 907 F.2d at 1456 (noting it "is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [ALJ]"). In this case, though, the undersigned is unable to ascertain the basis for the ALJ's decision when the primary evidence on which it appears she relied was blatantly disavowed at the hearing before the ALJ and the ALJ has not included any discussion regarding why she weighed this evidence more favorably than Plaintiff's testimony or other record evidence. Nor is it clear to the undersigned why, if the ALJ did not find the evidence suggesting the need for an assistive device persuasive, she nonetheless included some, but not complete, restrictions to Plaintiff's RFC regarding the use of an assistive device.

Upon review, the undersigned is left to guess at why the ALJ made the determinations she did.[8] *See Mascio*, 780 F.3d at 636–37 (noting remand may be appropriate when courts are left to guess at how the ALJ arrived at their conclusions and meaningful review is frustrated). Plainly, "a reasonable mind" cannot accept this determination and the evidence offered to support it "as adequate to support a conclusion." *See Biestek*, 587 U.S. at 103. The evidence offered is contradicted by other evidence in the record, with no accounting by the ALJ for why this evidence is given more credence than the other evidence supporting Plaintiff's need for a hand-held assistive device.

---

[8] The undersigned acknowledges that the ALJ points to numerous records indicating Plaintiff had normal motor functioning and intact gait. R.pp. 22–29. While an ALJ may have reasons for finding, based on the evidence and facts of this case, that Plaintiff's RFC need not include more limitations addressing her cane use, the ALJ here did not adequately explain the reasons for discrediting or not considering Plaintiff's contrary testimony regarding her physical capabilities and denial of her ability to exercise at the levels indicated in the social history of her medical records, leaving the undersigned to guess as to why some, but not all, restrictions on the use of assistive devices were included in the RFC. Meaningful substantial evidence review is frustrated without such an explanation.

Accordingly, the undersigned finds that remand is warranted.

### B. Remaining Allegations of Error

Plaintiff also argues the ALJ did not properly evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms and wrongfully discounted Plaintiff's testimony related to frequency of headaches. ECF No. 14 at 16–27. Because the undersigned has determined that the ALJ's failure to account for Plaintiff's prescribed hand-held assistive devices warrants remand, the undersigned declines to further address these remaining claims of error. Upon remand however, the ALJ should take such claims of error into consideration. With respect to any remaining claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock*, 206 F. Supp. 2d at 763 n.3 (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

### V.    CONCLUSION

It is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review.

The parties are referred to the Notice Page attached hereto.

January 21, 2026  
Charleston, South Carolina

Molly H. Cherry  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).