IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brandy P.,[1]<br><br>                Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security Administration,<br><br>                Defendant. | C/A No. 9:24-cv-7358-SAL<br><br>**OPINION AND ORDER** |

This social security matter is before the court for review of the January 21, 2026 Report and Recommendation of United States Magistrate Judge Molly H. Cherry (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 18.] In the Report, the magistrate judge recommends this court reverse the Commissioner's final decision denying Brandy P.'s ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and remand for further consideration. *Id.* The Commissioner timely objected. [ECF No. 20.] For the reasons below, the court adopts the Report, overrules the Commissioner's objections, and reverses and remands the decision for further administrative proceedings.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security

1

substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1). Without specific objections to portions of the Report, this court need not explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the record in order to

---

cases, federal courts should refer to claimants only by their first names and last initials.

accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

## DISCUSSION

### I.     Background and Procedural History

The Report sets forth the administrative proceedings and applicable law, which the court incorporates without a full recitation. [ECF No. 18.] Briefly, after a hearing, an administrative law judge ("ALJ") found Plaintiff had severe impairments of degenerative disc disease, connective tissue disorder, and obesity. *See* Tr. at 20. The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations, including "a hand held assistive device for uneven terrain or prolonged ambulation." *Id.* at 22. As relevant here, although Plaintiff had been prescribed both a walker and a cane, the ALJ included "the use of a cane . . . based on the recent prescription to use as needed." *Id.* at 27. As for the walker, the ALJ concluded it was not required because Plaintiff had not obtained one as of the hearing date. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs in significant numbers that Plaintiff could perform, and therefore that she was not disabled. *Id.* at 29–30.

Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council before filing this action. *See* ECF No. 18 at 2. She raises three claims of error by the ALJ—(1) failure to properly evaluate Plaintiff's lower back, legs, connective tissue disorder, and obesity; (2) improper disregard of Plaintiff's cane and rollator walker, which Plaintiff contends are necessary standing or walking; and (3) wrongfully discounting Plaintiff's testimony regarding the frequency of her headaches. [ECF No. 14.]

The Report recommends reversing the Commissioner's decision and remanding this case for further proceedings because the ALJ's decision regarding Plaintiff's assistive devices are not

supported by substantial evidence. [ECF No. 18 at 6–16.] Specifically, the magistrate judge found that the ALJ failed to reconcile or acknowledge discrepancies in the record, impermissibly cherry-picked evidence, and left gaps in her reasoning that frustrate meaningful judicial review—each related to the ALJ's conclusion that Plaintiff required a cane only for uneven terrain or prolonged ambulation. *Id.* Because the magistrate judge finds reversal is warranted based on this error, she did not address the remaining allegations of error. *Id.* at 16.

The Commissioner objects. [ECF No. 20.] He argues substantial evidence supports the ALJ's RFC assessment, and her findings were reasonable. *Id.*

**II.     Discussion**

As discussed, this court's review of a social security decision is narrow—the court looks for whether there is substantial evidence to support the agency's factual determinations and whether the proper legal standard was used. *See supra* pp. 1–2. The court is mindful that "[i]f [the Commissioner's] findings are supported by substantial evidence, the courts are bound to accept them. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) (internal citations omitted).

The Report details the deficiencies in the ALJ's decision that require reversal. The court agrees with and fully adopts the magistrate judge's reasons for recommending reversal and remand. As explained in the Report, Dr. Michael T. Latzka prescribed a "walking cane to use as needed and as directed to help with ambulation as some history of joint pain with arthritis and this will help assist if any flare and avoid a higher risk of fall when without assistance of ambulation[.]" Tr. 616. The ALJ found Dr. Latzka's opinion "partially persuasive based on the evidence showing some periods of antalgic gait." Tr. 29. But she further noted,

4

> [T]he record contains no explanation and no objective medical findings on physical examination to support the need for a cane, and it is not consistent with the other notes as discussed above, indicating the claimant had normal strength and normal gait. Moreover, the record contains no evidence of any appointment where the claimant was using a cane or any other assistive device to aid in ambulation.

*Id.* The ALJ included the cane requirement in the RFC, but only for uneven terrain and prolonged ambulation. *Id.* at 22.

As noted in the Report, the ALJ discounted Plaintiff's own reports that she used a cane and a walker, in part, because her treatment records repeatedly confirmed intact strength in her lower extremities, but also based on "her reports to her primary care provider that she exercises by walking and doing aerobics three to four times a week." Tr. 23. The record reflects that Plaintiff first reported such exercise in an appointment with Dr. Latzka in February 2020, and then that "identical notation remains unchanged and is rotely repeated in visit notes" from April 2021, March 2023, and September 2023. [ECF No. 18 at 10 (citing Tr. 557, 542, 614).] The Report highlights other medical records where Plaintiff's doctors encouraged her to do more physical activity, which suggests she had difficulty with exercise. *Id.* at 10–11. And more concerningly, at the hearing before the ALJ, Plaintiff directly addressed that notation in Dr. Latzka's notes and testified she would not have been physically capable of such activity in April 2021. Tr. 52–53. The ALJ did not reconcile the repeated notations of aerobic activity with Plaintiff's contrary testimony and other evidence. The magistrate judge characterized this as impermissible cherry-picking of the evidence. *See* ECF No. 18 at 11. The court agrees. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.'" (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))); *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not

5

mention material evidence, the court cannot say his determination was supported by substantial evidence."). While it is within the ALJ's purview to make credibility determinations and reconcile conflicting evidence in the record, the ALJ failed to adequately do so here.

In his objections, the Commissioner argues these statements were only one piece of evidence within the well-reasoned 14-page decision. [ECF No. 20 at 2.] He notes other medical records the ALJ relied on in finding a handheld assistive device was not needed at all times. *Id.* And he further asserts that, during her own hearing testimony, "Plaintiff only cited using a cane or other hand held assistive device when walking longer distances or outdoors, and did not provide any testimony or other medical evidence that she required such to balance when standing still, or when walking only short distances." *Id.* at 3 (citing Tr. 47). But the testimony the Commissioner cites includes no such qualification about what distances Plaintiff needed a cane to walk. Tr. 47 ("Q: Do you use anything to help you walk? A: Yes, a cane."). Elsewhere, Plaintiff testified she was unable to walk longer distances, but she did so only in reference to hobbies she can no longer pursue. She testified she could no longer stroll on the beach or walk long distances at sporting events. Tr. 50. But those statements cannot be interpreted as the only times she needed an assistive device for walking. In fact, Plaintiff testified she had recently fallen upon standing—"my leg goes numb sometimes so when I get up sometimes it go[es] numb and it like makes you jolt . . . . And my leg went out. . . . I just fell on the ground." Tr. 49. Nothing in her testimony limits her need for a cane in the way the Commissioner suggests.

The Commissioner further argues, "even the medical evidence upon which Plaintiff relies notes only that Plaintiff would require a hand held device to [sic] 'as needed' to 'help with ambulation,' rather than at all times." [ECF No. 20 at 3 (citing Tr. 616).] But in full, Dr. Latzka's prescription is "for [a] walking cane to use as needed and as directed to help with ambulation as some history of joint pain with arthritis and this will help assist if any flare and avoid a higher

6

risk of fall when without assistance of ambulation[.]" Tr. 616. The Commissioner and the ALJ selectively rely on the phrase "as needed" to limit the use of a cane to uneven terrain and prolonged ambulation without identifying substantial evidence supporting that limitation and do not address evidence suggesting that Plaintiff needed greater use of her cane. That difference—between always using a cane and needing one only for uneven terrain and prolonged ambulation—materially affects the disability determination in this case. [ECF No. 18 at 12–13.] And the court cannot track the ALJ's reasoning for imposing that narrower restriction.[2] *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) ("The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." (internal citations omitted)). Accordingly, the Commissioner's objections are overruled.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record, the court **ADOPTS** the Report, ECF No. 18. The Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

February 3, 2026　　　　　　　　　　　　　　　　　Sherri A. Lydon
Columbia, South Carolina　　　　　　　　　　　　　United States District Judge

---

[2] Perhaps this restriction reflects a compromise between the evidence showing no assistive device is necessary and the evidence supporting the use of an assistive device at all times. *Cf. Gibson v. Colvin*, No. 7:13-CV-62-BO, 2014 WL 4415969, at *2 (E.D.N.C. Sept. 8, 2014) ("It appears to the Court that the ALJ here simply performed a Solomonian splitting of the baby . . . . While this may appear to be a just result, it is not rooted in substantial evidence in the record and therefore fails."). The court agrees with the magistrate judge—with the current decision, the court is left to guess why some, but not all, restrictions on the use of assistive devices were included in the RFC. [ECF No. 18 at 15 n.8.]